IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NASHEBO SEENEY, :
:
      Movant/Defendant, :
:
v. : Civ. Act. No. 12-1578-LPS
: Cr. Act. No. 11-66-LPS
UNITED STATES OF AMERICA, :
:
Respondent/Plaintiff. :

**MEMORANDUM OPINION**

---

Nashebo Seeney. *Pro se* Movant.

Shannon Thee Hanson, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

---

March 22, 2018
Wilmington, Delaware

[signature]

STARK, U.S. District Judge:

I.      INTRODUCTION

Nashebo Seeney ("Movant") filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (D.I. 77; D.I. 87) The United States ("government") filed an Answer in Opposition. (D.I. 100) For the reasons discussed, the Court will deny Movant's § 2255 Motion without holding an evidentiary hearing.

II.     PROCEDURAL AND FACTUAL BACKGROUND

On or about May 11, 2011, federal law enforcement officers identified an Express Mail parcel as being suspicious, and determined that the parcel contained over five kilograms of powder cocaine. (D.I. 100 at 2-3) The next day, the agents conducted surveillance of a "controlled delivery" of the package to the listed address by an undercover agent posing as a postal letter carrier. During the delivery, Movant identified himself as the addressee and signed for the package. (*Id.*) After conducting further surveillance of Movant's activities, the agents entered the residence, lawfully searched the premises, and subsequently arrested Movant and his co-defendant, Melvin Lowe. (D.I. 100 at 4-5) On June 16, 2011, the grand jury for the District of Delaware of Delaware issued a three count Indictment charging Movant and co-defendant Lowe with: (1) conspiracy to possess with intent to distribute a Controlled Substance (500 grams or more of a mixture and substance containing a detectable amount of cocaine), in violation of 21 U.S.C. § 846; (2) attempted possession with intent to distribute a controlled substance (500 grams or more of a mixture and substance containing a detectable amount of cocaine), in violation of 21 U.S.C. § 841(a)(1); and (3) possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g). (D.I. 11; D.I. 12) Thereafter, the government and Movant entered into plea negotiations, and Movant pled guilty to conspiring to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine. (D.I. 43 ¶ 1) On February 13, 2012, the Court

sentenced Movant to 120 months of imprisonment, followed by eight years of supervised release. (D.I. 62) Movant did not appeal.

Movant timely filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant To 28 U.S.C. § 2255, and then an amended § 2255 Motion (hereinafter collectively referred to as "§ 2255 Motion"). (D.I. 77; D.I. 87) The government filed a Reply in Opposition. (D.I. 100)

## III. DISCUSSION

In his Motion, Movant asserts that defense counsel provided ineffective assistance by: (1) incorrectly advising him about the law concerning conspiracy; (2) failing to challenge the government's notice that Movant was subject to enhanced penalties under 21 U.SC. § 851; and (3) failing to subject the government's case to a meaningful adversarial testing process. The government contends that all three claims should be denied as meritless.

Movant has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500 (2003). Although Paragraph 9 of Movant's Plea Agreement contains the following waiver of Movant's right to file a direct appeal and/or a collateral attack on his conviction and sentence, the waiver expressly exempts ineffective assistance of counsel claims:

> The defendant knows that he has, and voluntarily and expressly agrees to waive, the right to file any appeal, any collateral attack, or any other writ or the right to file any appeal, any collateral attack, or any other

writ or motion in this criminal case after sentencing- including but not limited to, an appeal under Title 18, United States Code, Section 3742 or Title 28, United States Code Section 1291 or a motion under Title 28, United States Code Section 2255 -- ***except that the Defendant reserves his right to appeal based on a claim that:*** (1) Defendant's sentence exceeded the statutory maximum; (2) that the sentencing judge erroneously departed upwards from the Guideline range; or (3) ***that his counsel was constitutionally ineffective.***

D.I. 43) (emphasis added). Therefore, the Court can consider the Claims asserted in the instant Motion. *See United States v. Phillips*, 396 F. App'x 831, 835 n.4 (3d Cir. 2010) (noting that appellant could pursue ineffective assistance of counsel claim in collateral proceeding because appellate waiver expressly exempted ineffective assistance claims).

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first *Strickland* prong, Movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688. Under the second *Strickland* prong, Movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See id.* at 694; *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir. 1994). In the context of a guilty plea, a movant satisfies *Strickland'*s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart,* 474 U.S. 52, 58 (1985). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 668. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* at 689.

## A. Claim One: Advice About Conspiracy Charge

In his first claim, Movant contends that defense counsel incorrectly advised him that a conspiracy could be established without a written or verbal agreement, and that, as a result, he did not enter the guilty plea voluntarily, knowingly, or intelligently. Movant asserts that there was only circumstantial evidence of a conspiracy, because there was no connecting link (or agreement) between Movant and the sender of the "mysterious drug-filled package." (D.I. 77 at 21-23) This argument is unavailing.

Defense counsel's affidavit, and representations made by Movant and defense counsel to the Court during the plea colloquy and sentencing hearing, demonstrate that defense counsel and Movant met twelve times to discuss the legal options available to Movant, including potential witnesses and defenses. (D.I. 100-1 at 2-3; D.I. 100-1 at 15) During these meetings, defense counsel and Movant discussed the elements of the conspiracy charge, and defense counsel explained to Movant that "it's not necessary for the government to prove [you] knew the exact contents of that package" to establish guilt. (D.I. 100-1 at 44) According to counsel, the two of them extensively reviewed the case during their fourth meeting, after which Movant decided to enter a guilty plea. (D.I. 100-1 at 3)

During the plea colloquy, the government described the evidence it would have presented at trial to prove that Movant participated in the conspiracy (D.I. 100-1 at 26-32), and recited the following facts:

> The Suspect Parcel was earlier discovered to have contained over 5 kilograms of powder cocaine. The cocaine was packaged in bricks that were wrapped with carbon sheets and Saran wrap. The cocaine was contained in a green bucket with green packing peanuts.
>
> \*     \*     \*
>
> The agents videotaped the surveillance of the 1125 Chestnut Street delivery address, which lasted for approximately four hours. During their surveillance of 1125 Chestnut Street, agents identified [Movant]

– and his codefendant in this case, Melvin Lowe – engaging in countersurveillance of the surrounding area. According to law enforcement officers, [Movant] was observed numerous times throughout the surveillance period investigating the area immediately surrounding the Chestnut Street residence around the time the Suspect Parcel was suspected to be delivered. [Movant] interacted with his codefendant Melvin Lowe during those times. [Movant] was also in contact with other unindicted co-conspirators during the time of the controlled delivery.

At approximately 2:33 p.m., on May 12, 2011, an undercover agent, posing as a postal letter carrier, delivered the Suspect Parcel to the 1125 Chestnut Street delivery address. The undercover agent – referring to the name that was listed as the recipient of the package – told [Movant] that he had a delivery for a "Michael Johnson, Sr." The undercover agent then asked [Movant] whether he was in fact "Michael Johnson, Sr." [Movant] replied "yes," and informed the undercover agent that he had been waiting for the Suspect Parcel since the day before. The undercover agent also asked [Movant] to sign for the Suspect Parcel; [Movant] did so by signing "Michael Johnson, Sr."

[Movant] did not immediately open the Suspect Parcel. At approximately 2:40 on that same day, co-Defendant Melvin Lowe parked his 2000 Chrysler Concorde in front of the Chestnut Street residence and waited for [Movant] to exit the residence. [Movant] then entered the vehicle and drove around with Defendant Lowe around the block, engaging in what law enforcement officers observed as further counter-surveillance. [Movant] then exited the vehicle and entered the 1125 Chestnut Street residence.

\*   \*   \*

[Movant] was read Miranda Rights and Warnings and said he understood the warnings. [Movant] stated that the parcel was, in fact, his to an agent on the scene.

The law enforcement agents engaged in a lawful search of the 1125 Chestnut Street residence and discovered the open Suspect Parcel, discovered drug paraphernalia, specifically two scales located in an upstairs bedroom. They also discovered during the search a tan-colored plastic bag that contained 49 rounds of .38 millimeter ammunition, 21 rounds of .9 millimeter ammunition, and eight hollow-point rounds of .9 millimeter ammunition.

(D.I. 100-1 at 29-32) Movant admitted that these facts were true. (D.I. 100-1 at 32)

In addition, during the plea colloquy, the Court informed Movant of the elements of the conspiracy charge and reviewed the terms of the written Plea Agreement, and Movant acknowledged he understood the terms and that the written agreement accurately reflected his agreement with the government. (D.I. 100-1 at 16-32) Movant stated that he understood the elements of the conspiracy charge against him, that he was aware of his rights he was waiving, and that he was entering the guilty plea because he "conspired with another person to possess 500 grams or more of cocaine." (D.I. 100-1 at 28)

During the presentence interview, defense counsel reviewed the facts of the case with Movant, and Movant informed counsel that he "agreed to what he did" so that he could get acceptance of responsibility. (D.I. 100-1 at 43-4) It was defense counsel's opinion that, at "all times, [Movant] understood that he was pleading guilty to conspiring with intent possess . . . a substantial amount of cocaine." (D.I. 100-1 at 44) Thereafter, during the sentencing hearing, Movant stated, "Your Honor, I knew it was something illegal, some contraband. The type and weight of it, I did not know." (D.I. 100-1 at 50) Movant also agreed with the following description of the situation provided by defense counsel during the sentencing hearing:

> I think he is admitting to that but he is stuck on, I believe my client is stuck because you don't have to have a spoken or a written agreement to be a member of a conspiracy. He was a member of the conspiracy and his job was to receive the cocaine, the contraband, the illegal substance and he takes responsibility for it. But he can't sit here and say I knew it was five kilograms or ten kilograms.

(D.I. 100-1 at 50)

It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In this proceeding, Movant's allegation that he did not knowingly and voluntarily enter into the Plea Agreement because defense counsel misinformed him about the elements of a conspiracy charge fails to provide compelling evidence as to why the statements he

made during the plea colloquy should not be presumptively accepted as true. As a result, the Court concludes that Movant is bound by the representations he made during the plea colloquy, and that his guilty plea was knowing and voluntary.

The Court also concludes that defense counsel's advice did not amount to ineffective assistance. Significantly,

> [t]here are three essential elements of a drug distribution conspiracy under 21 U.S.C. § 846: (1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal. *It is sufficient if the government establishes a tacit agreement, which may rely exclusively on circumstantial evidence,* including a demonstrated level of mutual trust. To sustain a conspiracy conviction, the evidence need not be inconsistent with every less sinister conclusion save that of guilt.

*United States v. Laboy*, 511 F. App'x 228, 230 (3d Cir. 2013) (internal citations omitted; emphasis added). In other words, an agreement to commit a conspiracy can be implicit or explicit, and can be proven entirely by circumstantial evidence. *See United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986). Strong circumstantial evidence, without more, can be enough to support a jury's finding of possession of narcotics with intent to distribute,[1] and evidence of gun and drug possession help sustain the inference that the defendant was engaged in drug trafficking. *See United States v. Parker*, 621 F. App'x 109, 111 (3d Cir. 2015).

Analyzing defense counsel's advice within this legal framework demonstrates that defense counsel reasonably determined that Movant's use of a fake name, his admission that the parcel belonged to him, the fact that he had engaged in counter-surveillance measures during the controlled delivery, and the discovery of drug paraphernalia and ammunition in the residence, presented enough circumstantial evidence that Movant was part of a conspiracy, even without any proof of a written or verbal agreement between Movant and the sender of the parcel. *See United States v. Smith*,

---

[1] *See United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005).

294 F.3d 473, 477 (3d Cir. 2002) ("The existence of a conspiracy can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding."). Additionally, Movant's statement that he "*might never have* copped a plea" (D.I. 77 at 31) but for counsel's advice does not satisfy the prejudice prong of the *Strickland/Hill* standard. (emphasis added) Consequently, the Court will deny Claim One.

### B. Claim Two: Lack of Challenge to Notice of Enhanced Penalties

In Claim Two, Movant asserts that defense counsel provided ineffective assistance by failing to: (1) argue that the government's "Information to Establish Prior Conviction" ("§ 851 Notice") (D.I. 40) did not comply with the notice requirements of 21 U.S.C. § 851(a); (2) inform Movant of the government's § 851 Notice and explain its effect on his sentence; and (3) investigate the prior conviction that formed the basis of the § 851 Notice and challenge its accuracy and relevance. These contentions are unavailing.

With respect to Movant's first contention, § 851(a)(1) provides, in pertinent part,

> [n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason on one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person *or counsel for the person*) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1) (emphasis added). The government complied with this provision by filing the § 851 Notice on October 3, 2011, specifying the Movant was subject to an enhanced penalty "by virtue of" Movant's July 27, 1995 conviction for a felony drug offense in the Delaware Superior Court. (D.I. 40) Defense counsel was representing Movant on that date, and a copy of the § 851 Notice was electronically delivered to defense counsel through the Court's CM/ECF system. Movant entered his guilty plea two days later, on October 5, 2011. Since these procedures satisfy the

filing requirements for a § 851 Notice, defense counsel's failure to challenge the method by which the § 851 Notice was filed did not amount to ineffective assistance. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) (holding that attorney does not provide ineffective assistance by failing to raise meritless arguments or objections).

Movant's next assertion -- that defense counsel never reviewed the § 851 Notice with him, and that he did not understand that his sentence could be enhanced due to his prior felony conviction -- is similarly unavailing. Defense counsel, in his affidavit, asserts that he reviewed the § 851 Notice with Movant the day after it was filed. Moreover, paragraphs Two and Three of the Plea Agreement state:

> 2. [Movant] understands that this offense, because he has previously been convicted of a felony drug offense, carries a maximum sentence of life imprisonment with a minimum mandatory of ten (10) years, a fine of $4,000,000, or both, and at least eight (8) years supervised release, and a $100 special assessment.
>
> 3. [Movant] also understands that, in order for him to be subject to the enhanced statutory penalties in 21 U.S.C. § 841, the government would have to prove that [Movant] committed the acts alleged in Count One of the Indictment after having a final conviction for a felony drug offense, that is, on July 27, 1995, [Movant] was convicted of Trafficking in Cocaine 5-50 grams (a Class B felony) in Superior Court for the State of Delaware. [Movant] does not contest that he has this prior conviction.

(D.I. 43 at 1-2) Finally, at the plea colloquy, the Court informed Movant that a guilty plea would result in a mandatory minimum sentence of ten years. Given these circumstances, the Court rejects as meritless Movant's contention that he did not understand the enhanced penalties to which he was subjected.

In his last allegation of Claim Two, Movant asserts that defense counsel failed to investigate and challenge the accuracy or relevance of the prior § 851 conviction. He also alleges that he did not qualify for the § 851 enhancement because his prior convictions were "petty" and, therefore, "in contrast" to the intent of the recidivist enhancement. (D.I. 116 at 2) However, Movant does not

provide, and the Court does not discern, any basis for challenging the validity or relevance of his 1995 Delaware felony conviction. As just explained, Movant stipulated to the conviction in his Plea Agreement. Moreover, a defendant cannot challenge the validity of a qualifying prior § 851 conviction if it "occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). In this case, the government filed the § 851 Notice on October 3, 2011, more than sixteen years after Movant was convicted of the predicate Delaware felony. As such, any challenge to the § 851 conviction would have been denied as time-barred.

In short, defense counsel was not ineffective for failing to raise a futile challenge to the § 851 Notice and subsequent enhancement of his sentence. Accordingly, the Court will deny Claim Two in its entirety.

### C. Claim Three: Failure to Subject Government's Case to Meaningful Adversarial Testing

Finally, Movant asserts that defense counsel failed to review exculpatory evidence with him and failed to conduct any investigation into the illegal identification of Movant and the subsequent illegal search and seizure of evidence. (D.I. 87 at 2-3) Citing *United States v. Cronic*, 466 U.S. 648 (1984), Movant contends that the two-pronged *Strickland/Hill* standard is inapplicable to this argument and that the Court should presume prejudice because defense counsel failed to subject the government's case to meaningful adversarial testing on a "wholesale level." (D.I. 87 at 3) The premise of Movant's argument appears to be that he was constructively denied counsel because counsel "dismissed [his] demands to develop a defense strategy and in essence was acting more as a 'friend of the court' rather than [as] an adversary to the prosecution." (D.I. 87 at 2)

In *Cronic*, the United States Supreme Court articulated a very limited exception to *Strickland*'s requirement that a petitioner must demonstrate both deficient performance and prejudice in order to prevail on an ineffective assistance of counsel claim, and held that there are three situations in which prejudice caused by an attorney's performance will be presumed: where the defendant is

completely denied counsel at a critical stage; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; or where the circumstances are such that there is an extremely small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated. *See* 466 U.S. at 659 & n.25. The *Cronic* presumption of prejudice applies when counsel has completely failed to test the prosecution's case throughout the entire proceeding. *See Bell v. Cone*, 535 U.S. 685, 697 (2002).

Movant's instant contention is not successful. In order to obtain relief under *Cronic*, there must be a complete collapse in the adversarial process. No such collapse happened here. During the plea process, defense counsel met with Movant on multiple occasions, reviewed the applicable law and facts of the case with Movant, and rendered his professional opinion as to the potential exposure Movant would face if he elected to proceed to trial. By pleading guilty, Movant saved himself from an additional three to five years of potential incarceration. Counsel's performance was more than adequate and fails to satisfy the exacting *Cronic* standard.

Defense counsel's performance during the court proceedings also fails to satisfy the *Cronic* standard. The record reveals that defense counsel met with Movant on three different occasions after Movant entered his guilty plea in order to discuss sentencing. In an effort to advocate that the Court not sentence Movant above the mandatory minimum, defense counsel responded to the draft PSR, filed a sentencing memorandum prior to sentencing, and argued forcefully for a middle-of-the-guidelines sentence. Additionally, after Movant sent a post-guilty plea letter to the probation officer stating that he never knew he was engaged in a drug conspiracy, which could have resulted in the Court denying the three-point reduction for acceptance of responsibility, defense counsel persuaded the Court that Movant should still be entitled to the full three-point reduction. These actions fail to justify presuming prejudice under *Cronic*.

Having determined that the *Cronic* presumption of prejudice is inapplicable, the Court must review Claim Three under both prongs of the *Strickland/Hill* standard. Doing so, the Court finds the Claim unavailing. Movant does not identify any exculpatory evidence that defense counsel did not review with him. To the contrary, defense counsel's affidavit illustrates that he properly investigated, researched, and advised Movant about the evidentiary issues involved in his case.

Also, the record belies Movant's conclusory contention that defense counsel "was well aware that the entire evidence put forth by the government was the 'fruit of an illegal search and seizure' with regard to the identification of [Movant] and seizure of evidence." (D.I. 87 at 2-3) As explained in the Criminal Complaint, the parcel was initially deemed suspicious at the Philadelphia USPS Processing and Distribution Center because of its "size and weight [], and the fact that all seams were glued to prevent odor from emitting from the parcel." (D.I. 2 at 3, ¶ 9) Although the address indicated on the parcel was deliverable, "no individual with the name Michael Johnson, Sr. [the addressee] was currently receiving mail at the address." (D.I. 2 at 3-4, ¶ 10) A canine handler with the New Jersey State Police then conducted an exterior inspection of the parcel with his narcotic detection canine, who indicated that the parcel "contained a controlled substance or the residue of a controlled substance. The canine did not alert to any other parcel in the line-up." (D.I. 2 at 4, ¶ 11) The package was only opened and searched after a federal search warrant was obtained. (D.I. 2 at 4, ¶ 12) Nothing in this record even remotely supports Movant's contention that the evidence was obtained in an illegal manner.

In short, given Movant's failure to support his contentions regarding the exculpatory evidence and the illegality of the police search and seizure with anything but conclusory and sweeping generalizations, the Court concludes that counsel's actions with respect to the evidentiary issues of the case did not amount to ineffective assistance. Accordingly, the Court will deny Claim Three as meritless.

## IV. EVIDENTIARY HEARING

Section 2255 requires a district court to hold a prompt evidentiary hearing unless the "motion and the files and records of the case conclusively show" that the Movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Fed. R. Civ. P. 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that Movant is not entitled to relief. Therefore, the Court will deny Movant's § 2255 Motion without an evidentiary hearing.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Movant's claims lack merit, and is persuaded that reasonable jurists would not find this assessment to be debatable. Therefore, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For all the foregoing reasons, the Court will dismiss Movant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence without an evidentiary hearing. Additionally, the Court will not issue a certificate of appealability. The Court shall issue an appropriate Order.